IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHERRY J. BAILEY, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 8:20-cv-03204-PX |
| THE TJX COMPANIES, INC. | * |
| Defendant. | * |

**MEMORANDUM OPINION**

Pending before the Court in this employment discrimination action is the motion for summary judgment filed by Defendant The TJX Companies, Inc. ("TJX"). ECF No. 62. No hearing is necessary. D. Md. Loc. R. 105.6. The motion is granted for the following reasons.

**I.     Background**

Plaintiff Sherry J. Bailey is an African American woman who was hired in January 2014 to work as an Assistant Store Manager for T.J. Maxx, a retail chain owned and operated by TJX. ECF No. 62-4 at 11, 70-71. Before Bailey started working, TJX provided her its Global Code of Conduct ("Code of Conduct" or "the Code"). *Id.* at 15-18, 73-116. The Code advises employees that "dishonest business practices," such as "[f]alsifying Company records (including payroll and timekeeping records, purchase orders, or other records)," may prompt TJX to take corrective action "up to and including termination of employment." *Id.* at 82, 92. The Code details a graduated corrective action process. ECF No. 62-6 at 21. Bailey acknowledged having read the Code of Conduct and agreed "that compliance with the Code is a condition of [her] continued employment" with TJX. ECF No. 62-4 at 117.

In October 2014, Bailey was promoted to Store Manager. *Id.* at 15-16, 72. In that position, Bailey primarily reported to the District Manager, Janet Allen. *Id.* at 19. While under Allen's supervision, Bailey had repeatedly received corrective actions for violations of the Code of Conduct. *Id.* at 118-22. One of them was a formal written warning issued in July 2018 for falsifying documents; the warning cautioned Bailey that any subsequent similar infractions "will result in further Corrective Action up to and including termination." *Id.* at 121.

In March 2019, Bailey became the Store Manager at the Bowie location. *Id.* at 12, 26-28. Soon thereafter, Bailey began reporting to District Manager Bob Bandanza, who oversaw 11 stores in the region. *Id.* at 28; ECF No. 62-5 at 9-10. During the relevant period, Bailey had several direct reports, including two assistant store managers, Hira Booth and Durrell Jennings, and another employee, Eerik Kari. ECF No. 62-5 at 18-19.

In June 2019, Booth notified Bandanza that Bailey had signed or initialed Booth's name on an Associate Record Card—a form using during the corrective action process— without Booth's permission. ECF No. 62-7 at 11-12, 23-26; ECF No. 62-5 at 77; ECF No. 62-6 at 20-21 (explaining the purpose of these cards); *see also* ECF No. 66-17 at 1. Booth also suspected that Bailey had written Booth's first name, "Hira," on a Jewelry Freight Log for that month, again without Booth's permission. ECF No. 62-7 at 16-22, 31; *see also* ECF No. 62-5 at 68 (explaining that the Jewelry Freight Log tracks jewelry deliveries to the store and requires a manager's signature upon receipt). Bailey admitted that she wrote "Hira" on the jewelry log. ECF No. 62-4 at 49-50, 56.[1]

---

[1] Separately, Jennings later told Bandanza that he had witnessed Bailey writing Booth's name on a Cashier Awareness Log, which TJX managers use to log corrective actions for cashiers. ECF No. 62-5 at 49-52; ECF No. 62-8 at 24-25; ECF No. 62-9 at 5-6. And Kari notified Bandanza that he believed Bailey had initialed the Cashier Awareness Log under his name, along with a notation that "Eerik forgot to sign." ECF No. 62-5 at 69-70; ECF No. 62-9 at 16-18, 22-23. Although Bailey admitted that she penned the annotation, "Eerik forgot to sign," she denied otherwise placing his initials on the document. ECF No. 62-4 at 53-54.

2

The next month, Bailey complained to Bandanza about Booth having written in a store log, "Durrel [Jennings] I'm going to kill you. You did not get the cashier awareness book signed." ECF No. 62-5 at 20-21; ECF No. 62-8 at 33. Viewing the note as a credible threat, Bailey urged Bandanza to either terminate Booth immediately or transfer her to another store. ECF No. 62-4 at 41-46, 124; *see also* ECF No. 62-5 at 22. On July 8, 2022, Bandanza spoke to Booth and Jennings at the Bowie store about the note. From this conversation, Bandanza concluded that while the note had been "unprofessional," neither Booth nor Jennings considered it a "threat." ECF No. 62-5 at 20-29. Accordingly, Bandanza issued a formal written warning to Booth but took no other action. *Id.*; ECF No. 62-7 at 7-10.

On the same visit, Bandanza also discussed with Bailey her alleged forgery of Booth's initials and urged her to tell him "the truth." ECF No. 62-5 at 27-29; ECF No. 16-19 at 1. After this meeting, Bailey emailed Bandanza to complain that he was "discriminating" against her by "attacking [her] character instead of addressing the urgent LIFE THREATENING matter." ECF No. 16-19 at 1. Nothing in the record suggests that Bandanza responded to this email.

Regarding the forgery claims against Bailey, Bandanza next involved the Human Resources department, led by Regional Manager, Rashanna Jackson. ECF No. 62-5 at 54; ECF No. 62-6 at 7. Megan Mayes, Jackson's assistant, investigated the allegations, reviewing the purportedly falsified documents and interviewing employees of the Bowie store. ECF No. 62-5 at 54-60. Mayes next shared the results of her investigation with Jackson. ECF No. 62-6 at 14-19. Jackson, Bandanza, and other TJX leadership then discussed issuing Bailey a formal written warning. *Id.*; ECF No. 62-5 at 56-57, 62-63.

On July 29, 2022, Bailey participated in an "assimilation meeting" for Bandanza's eleven direct reports. ECF No. 62-5 at 33-36, 63; ECF No. 62-6 at 12. During the meeting, Bailey

complained to Jackson that she did not think Bandanza "was supporting [her] as the store manager" and that "he was listening" to Booth instead of her. ECF No. 62-4 at 61. Meanwhile that same day, Bandanza drafted the corrective action for falsifying documents, which Jackson later approved. ECF No. 62-4 at 130 ("This code of conduct warning is because it's been validated that Sherry falsified company documents by initialing company forms with other associates initials without them being present."); ECF No. 62-5 at 44; ECF No. 62-6 at 14-19. Because this was Bailey's second offense of this kind, Bailey was subject to termination pursuant to the Code of Conduct. ECF No. 62-5 at 62-65, 73; ECF No. 62-6 at 23-24.

On July 31, 2019, Bandanza met with Bailey to inform her of her termination. ECF No. 62-4 at 57-58; ECF No. 62-5 at 64-66; ECF No. 62-6 at 24-26. Thereafter, Bandanza hired an African American man, Ralph "De" Padaranthsingh, to replace Bailey. ECF No. 62-5 at 72; ECF No. 62-7 at 28. Bandanza has also promoted four other African American store managers in the past three years. ECF No. 62-5 at 13.

On February 24, 2020, Bailey filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 62-4 at 68, 131-32. In it, Bailey contended that she was fired on account of her race and in retaliation for having participated in TJX's assimilation meeting. *Id.* at 131. On August 4, 2020, the EEOC notified Bailey of her right to sue. ECF No. 1-1 at 2-4. On November 6, 2020, Bailey filed suit using the Court's preprinted complaint form for pro se litigants, alleging that TJX had racially discriminated and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). ECF No. 1 at 4-6.[2] On December 28, 2022, after discovery, TJX

---

[2] On the Complaint form, Bailey also checked the box indicating that she is pursuing a sex-based discrimination claim and mentions having been subjected to a "hostile work environment." ECF No. 1 at 6, 8. However, Bailey has since made clear that she is not pursuing either as a cause of action. ECF No. 62-4 at 12-13.

moved for summary judgment, principally contending that no genuine dispute of fact exists as to the legitimate, non-discriminatory reasons for Bailey's termination. Bailey opposed the motion,[3] and the matter is now ready for resolution.

## II.     Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)); *see also Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) ("[The nonmoving party's] self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment."). "A mere scintilla of proof . . . will not suffice to prevent summary judgment[.]" *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). But "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

[3] Bailey filed the exhibits to her response one day after the deadline. ECF Nos. 66 & 67. TJX urges the exhibits should be stricken as untimely. ECF No. 68 at 20. The Court denies that request.

trial," summary judgment against that party is warranted. *Celotex*, 477 U.S. at 322.

### III. Analysis

Reading the Complaint most charitably to Bailey, she pursues claims for race discrimination and retaliation against TJX. The Court discusses each claim separately.

#### A. Discrimination

Title VII prohibits discrimination on account of race. 42 U.S.C. § 2000e-2(a). In the absence of direct evidence of discriminatory animus, Title VII claims are subject to the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)). To sustain the claim, the plaintiff must first make a prima facie showing that she belongs to a protected class; that she was performing her job duties satisfactorily at the time that the employer took an adverse action against her; and that the circumstances surrounding such adverse action give rise to an inference of discrimination. *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010); *see also Cook v. CSX Transp. Corp.*, 988 F.2d 507, 512 (4th Cir. 1993) ("The question confronting a judge faced with determining whether a prima facie case under Title VII has been made is whether the record as a whole gives rise to a reasonable inference of racially discriminatory conduct by the employer."). If the plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the adverse action. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the stated reasons are mere pretext for discrimination. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254-56 (1981).

TJX first argues that Bailey cannot satisfy the prima facie case, principally because no evidence gives rise to an inference that TJX acted adversely to Bailey on account of her race. ECF No. 62-1 at 18-21. Bailey, in response, generally describes that Bandanza had treated other employees such as Booth and another store manager, Michelle Laws, more favorably than she. ECF No. 65 at 13-15. Although comparator evidence is not required to demonstrate discriminatory animus, *see Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003), a plaintiff relying on such evidence must put forward comparators who are "similar in all relevant respects." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). This typically means that the plaintiff and identified comparators share "the same supervisor, [were] subject to the same standards, and engaged in the same conduct" but with disparate outcomes to the plaintiff's disadvantage. *Id.*

Bailey attempts to cast her assistant manager, Booth, as sufficiently similar because both were "members of the managerial team at the Bowie location[.]" ECF No. 65 at 14. But the record indisputably reflects that Bailey, as Store Manager, directly supervised Booth. Thus, they had different roles and responsibilities. Additionally, each had sufficiently dissimilar disciplinary records, rendering them ill-suited for comparison. Booth had no prior written warnings before she had been reprimanded for her unprofessional note to Jennings and, more to the point, she had no prior disciplinary infractions for falsifying documents. Bailey, in contrast, had five prior warnings, including one specifically for forging an employee signature. *Compare* ECF No. 62-7 at 9-10, *with* ECF No. 62-4 at 118-22.

As to Laws, although she held a position similar to Bailey, she too is an African American woman. ECF No. 67 at 15-18, 242, 257. Consequently, even if the trier of fact could conclude that Laws was treated more leniently than Bailey, race could not have been the driving

7

force behind the disparate treatment. *Accord Davis v. Kendall*, No. TJS-21-2593, 2022 WL 17668747, at *6 (D. Md. Dec. 14, 2022) (finding that more favorable treatment of similarly situated individuals "does not make . . . claims of disparate treatment plausible; it makes them less plausible"). Thus, Bailey's comparator evidence fails to establish an inference of discriminatory animus.

More generally, the record is devoid of any evidence that Bandanza mistreated Bailey on account of race. Bailey concedes that she knew of no time that Bandanza ever referenced her race. ECF No. 62-4 at 68 (Q: "[D]id you ever hear Mr. Bandanza make any reference to your race?" A: "Not that I recall, ma'am.").[4] Indeed, Bandanza hired another African American store manager to fill Bailey's spot and has promoted other African Americans to similar management positions. ECF No. 62-5 at 13, 72. *Cf. Danial v. Morgan State Univ.*, 426 F. Supp. 3d 135, 147 (D. Md. 2019) ("[R]eplacement within the protected class gives rise to an inference of non-discrimination with respect to the protected status.") (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 488 (4th Cir. 2005)); *McCaskey v. Henry*, 461 F. App'x 268, 270 (4th Cir. 2012). For these reasons, no reasonable juror could find that Bailey's termination was racially motivated.

Because Bailey has failed to adduce any evidence supporting that Bandanza treated Bailey adversely on account of race, she cannot make a prima facie showing. But even if she could meet this burden, one which is concededly "not onerous," *Burdine*, 450 U.S. at 253, she also has not offered any evidence that TJX's stated reason for her termination was pretextual. On this element, the plaintiff must put forward some evidence that race, rather than the stated

---

[4] In addition to Bandanza, Bailey maintains that Booth—her subordinate—had also discriminated against her. ECF No. 65 at 13; *see also* ECF No. 62-4 at 13. According to Bailey, Booth was "out to get [her] by any means necessary" because she "had aspirations of becoming a Store Manager." ECF No. 65 at 2. Without more, this all-too-familiar workplace dynamic does not implicate Title VII. *See* ECF No. 62-4 at 30-34 (Bailey conceding at her deposition that Booth never once referenced Bailey's race).

grounds, was the reason she was terminated. *Id.* at 256. She may do this by adducing some evidence that the stated reasons were false, unreliable, or otherwise not worthy of credence. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804-05). *But see Holland v. Washington Homes, Inc.*, 487 F.3d 208, 216 (4th Cir. 2007) ("Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it.") (quoting *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006)).

Viewing the record most favorably to Bailey, nothing suggests that TJX's stated reason for firing her was not the true one. The adverse action was well supported and consistent with TJX's own written policies. ECF No. 62-4 at 130; ECF No. 62-5 at 64-66; ECF No. 62-6 at 24-30. Although Bailey personally disagrees with the decision, and believes sincerely that it was unjustified, her disagreement alone does not make the employer's decision "unworthy of credence." *Burdine*, 450 U.S. at 256 (citing *McDonnell Douglas*, 411 U.S. at 804-05). In short, Bailey can point to no evidence that TJX's grounds for termination were false or unreliable. *Cf. Connor v. Giant Food, Inc.*, 187 F. Supp. 2d 494, 498 (D. Md. 2002) (finding no pretext where employee presented no evidence that employer's reason for termination was false); *see also Holland*, 487 F.3d at 217-18 (same). Thus, because no evidence supports that TJX's stated reasons for terminating Bailey are pretextual, summary judgment must be granted in TJX's favor.

### B. Retaliation

Title VII also prohibits an employer from retaliating against an employee who avails herself of the protections afforded under Title VII. 42 U.S.C. § 2000e-3(a); *Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62-67 (2006).  Absent direct evidence of retaliatory animus, the plaintiff must make a prima facie showing that she engaged in activity protected under Title VII; that the employer took adverse action against her; and that a causal connection exists between the two.  *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021); *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018).  If the plaintiff satisfies this relatively minimal burden, then the employer must articulate a legitimate, non-retaliatory reason for the adverse action, after which the burden then shifts back to the employee to demonstrate that the purportedly non-retaliatory explanation was mere cover for discrimination.  *Roberts*, 998 F.3d at 122 (citing *Foster v. Univ. of Md.—Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015)).

TJX first argues that no evidence reflects Bailey having engaged in Title VII protected activity.  ECF No. 62-1 at 28-29.  Protected activity encompasses "complaints of discrimination based upon race, color, religion, sex or national origin."  *Roberts*, 998 F.3d at 122 (internal quotations and citations omitted).  Importantly, an employment practice must be "'actually unlawful under Title VII' or reasonably believed by the employee to be unlawful" to qualify as protected activity.  *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 604 (D. Md. 2018) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015)); *see also Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012) ("[A]n employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct.").  But "[g]eneral complaints of unfair treatment" alone do not amount to protected activity.  *Bowman v. Baltimore City Bd. of School Commr's*, 173 F. Supp. 3d 242, 248 (D. Md. 2016) (citing *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 587 (D. Md. 2012)).

Viewing the record most favorably to Bailey, she complained to Bandanza that he had been "discriminating" against her because he focused on her misconduct over that of her subordinate. ECF No. 66-19. She also complained to Jackson about Bandanza's management style during the assimilation meeting. ECF No. 62-4 at 61. From this, a rational trier of fact would be hard pressed to conclude that Bailey's generalized commentary amounts to protected activity under Title VII.

But even if Bailey's nonspecific accusation of "discrimination" amounts to protected activity, nothing ties her termination to that complaint. Jackson, not Bandanza, ultimately approved Bailey's termination; and no evidence suggests that Jackson even knew Bailey had complained to Bandanza about his supposed discrimination. ECF No. 62-6 at 14-19. From this, no rational juror could conclude that Bailey had been terminated because she had complained to Bandanza about her mistreatment. Rather, the record clearly reflects that TJX terminated Bailey, following a good-faith investigation, for repeated instances of workplace misconduct. *Cf. Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 903 (4th Cir. 2017) (rejecting Title VII retaliation claim); *Powell v. Biscuitville, Inc.*, 858 F. App'x 631, 633 (4th Cir. 2021) (same). Thus, the retaliation claim, too, fails and summary judgment is granted in TJX's favor.

### IV.   Conclusion

For the foregoing reasons, TJX's motion for summary judgment is granted. A separate Order follows.

<u>May 25, 2023</u>                                                               <u>        /S/         </u>
Date                                                                                             Paula Xinis
                                                                                                 United States District Judge